## STEWART v. STEWART.

No. 4310.   Decided January 9, 1926.   (242 P. 947.)

1. DIVORCE—FINDINGS AND DECREE OF DIVORCE, SUPPORTED BY CLEAR PREPONDERANCE OF EVIDENCE, WILL NOT BE DISTURBED BY SUPREME COURT. Findings and decree of divorce, which are supported by clear preponderance of evidence, will not be disturbed by the Supreme Court.

2. DIVORCE—DISCRETION OF TRIAL COURT IN DISTRIBUTING PROPERTY IS NOT ARBITRARY; DISCRETION IS SUBJECT TO REVIEW. The discretion vested in the trial court in applying Comp. Laws 1917, § 3000, and in making distribution of property, is not arbitrary, but a sound legal discretion, subject to review.

3. DIVORCE—JUDGMENTS AND ORDERS OF TRIAL COURTS IN AWARDING ALIMONY OR MAKING DISTRIBUTION OF PROPERTY WILL NOT BE INTERFERED WITH, IN ABSENCE OF PREJUDICIAL ABUSE OF DISCRETION. The judgments and orders of trial courts awarding alimony, or in making distribution of property pursuant to Comp. Laws 1917, § 3000, will not be interfered with, unless it appears

with at least reasonable certainty that the discretion vested in those courts has been abused to the prejudice of appellant in some particular.[1]

4. DIVORCE—DIVISION OF PROPERTY AS MADE BY TRIAL COURT HELD CLEARLY INEQUITABLE AND UNFAIR TO DEFENDANT WIFE. In husband's action for divorce, based upon an assault by the wife, which, though unjustified, was not sufficient to warrant court of equity to deprive her of her property rights, a decree of distribution awarding to wife the household goods, plus $250, and to the husband the dwelling house, including the real estate, valued in excess of $1,250 and jointly owned by the parties, was inequitable and unfair to the wife, and will be modified so that defendant will receive the household goods without the $250, but half of the real estate with the dwelling house.

Appeal from District Court, Third District, Salt Lake County; *Wm. S. Marks,* Judge.

Suit for divorce by Albert L. Stewart against Grace Stewart, who interposed a counterclaim. From an interlocutory decree granting divorce to plaintiff and making a distribution of property, defendant appeals.

AFFIRMED in part, and REVERSED in part with directions.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for appellant.

*John F. Tobin,* of Salt Lake City, for respondent.

---

[1] *Friedli* v. *Friedli,* 65 Utah, 605, 238 P. 647.
Corpus Juris-Cyc. References.
[1]   Divorce, 19 C. J. p. 193 n. 30.
[2, 3]   Divorce, 19 C. J. pp. 329 n. 72; 334 n. 49, 50.
[4]   Divorce, 19 C. J. p. 334 n. 49.

FRICK, J.

This is an appeal from an interlocutory decree of divorce, entered by the district court of Salt Lake county in favor

of the plaintiff. The defendant appeals and assigns numerous errors.

The defendant, in addition to setting up a defense in her answer to plaintiff's prayer for a divorce, also filed a counterclaim in which she prayed for a divorce from the plaintiff. She now insists in her assignments of error that the district court erred, not only in granting plaintiff's prayer for divorce, but also in refusing to grant her prayer and in not making findings of fact upon her counterclaim. While there is considerable evidence in support of both the defendant's defense and her counterclaim, yet, upon the whole, the clear preponderance of the evidence supports the findings and decree of divorce in favor of the plaintiff, and hence we cannot interfere with the decree in so far as it relates to the divorce.

While, as stated, there are various errors assigned, yet those relating to the counterclaim and other matters are not vital. There, however, is an assignment which assails the division or distribution of the property owned by plaintiff and defendant as made by the court which requires careful consideration. In view, therefore, that the other assignments are not vital, we shall at once proceed to a consideration of the question of property rights, and shall confine ourselves to a consideration of that part of the evidence which relates to the division of the property.

The evidence upon that subject is not in dispute. It appears that the parties to this action are colored people, both of whom had been married before they entered the marriage relation with each other in August, 1914. Both have passed beyond the meridian of life. The plaintiff, for a number of years, both immediately before and after he was married to the defendant, was employed as a Pullman porter on a railroad running between Salt Lake City, Utah, and Butte, Mont. During the time he was employed as such porter, according to his testimony, he received the munificent wage of from $30 to $35 per month exclusive of tips, which, he said, amounted to about the same amount each month. Out of that he was required to pay his board both while on duty

and while at home. After he left the Pullman service, according to his statements, he received wages at the rate of from $68 to $70 per month. When he was married in 1914 he had saved during the whole period of his prior life about, or perhaps a few dollars in excess of $100 in money, and had no other property except a trunk and some clothes. At the time of the marriage, and for some years prior thereto, the defendant rented and conducted a rooming house in Salt Lake City, and she owned the furniture and other property she needed in conducting that business. It seems that she continued to operate the rooming house after the marriage until in September, 1916, when they purchased a 7-room dwelling house in Salt Lake City. The defendant transferred her furniture and other furnishings from the rooming house into the dwelling house. About that time the plaintiff entered the employ of the Rio Grande Western Railroad Company at Salt Lake City and was paid wages at the rate of from $68 to $70 per month, as before stated. At the time he obtained the divorce, and perhaps for some time prior thereto, he was employed in the United States post office at Salt Lake City and received wages a few dollars in excess per month of that hereinbefore stated. Upon the other hand, the testimony is to the effect that the defendant did laundry work both at her home and in private families and cleaned houses when requested and in addition to such work also assisted at various functions in the capacity of a waitress, and earned on an average $7 per week, and in addition did all of her own house work. It appears she also kept some chickens at the home where they lived. The evidence shows that plaintiff did very little, if anything, about the home. While plaintiff contends and the defendant conceded that plaintiff contributed some small sums of money for the purchase of some household articles as they were needed, yet it is clear from the evidence that the money he contributed for that purpose during the 10 years of their married life was very small indeed, almost insignificant. As before stated, in 1916 they purchased the dwelling house, for which they agreed to pay $1,250, of which sum $50 was paid in cash and

the remainder was to be paid at the rate of $18 per month with accruing interest. It is conceded that plaintiff made the monthly payments out of his wages, and at the time of the trial the dwelling house was fully paid for, and was free of any incumbrance. The dwelling house was purchased in the joint names of plaintiff and defendant, and, after the purchase price had been fully paid, a deed was executed and delivered to them in their joint names, and the title to the same still is vested in them jointly as tenants in common. There is no evidence respecting the actual value of the dwelling house, aside from the fact that the purchase price was $1,250. There are, however, some facts in evidence from which an inference can be deduced that the actual value of the dwelling house is somewhat in excess of that amount. There likewise is no competent evidence respecting the actual value of the household goods owned by defendant. The plaintiff ventured a guess, however, that it was probably worth about $850, but from the description and character of the property and the length of time that it had been in actual use, it is manifest that the actual or money value thereof was far less than that amount. In this connection it should also be kept in mind that there are no children or other dependents. While it appears from the testimony of her physician that the health of defendant was not robust, and that she was afflicted with rheumatism and at times was unable to work, yet it also appears that plaintiff is perhaps about 10 years older than defendant, and is not capable of earning large wages. Physically and otherwise, therefore, neither one has much advantage over the other so far as future probabilities are concerned, except that perhaps the plaintiff, in view of his better health, is perhaps a little better able to earn a living.

With the foregoing undisputed facts before the court, it distributed the property as follows: To the defendant was awarded all the household goods, while to the plaintiff was awarded the dwelling house, including the real estate. The plaintiff was, however, required to pay to the defendant the sum of $250. The defendant was denied suit money and

attorney's fees, and was required to pay her own costs. The plaintiff thus was awarded all of the real property, including the dwelling house, which was owned jointly by the parties, except $250 and the defendant was awarded nothing except what property she owned when she married plaintiff, which property was, however, used by them during the full period of their married life, and much of it had been used prior to that time. While it is true that in this case the divorce was granted to the husband for the reason that the defendant had committed a grievous offense against him, yet it is also true that the assault was one of those sudden ebullitions of temper that sometimes occur even among law-abiding people. It is also true, that while there was some provoca-. tion for defendant's act, yet as a matter of law she was not justified in doing what she did. The act, in view of all the circumstances, however, was not such as would warrant a court of equity to deprive the defendant of her property rights. Our statute (Comp. Laws Utah 1917, § 3000), so far as material here provides:

"When an interlocutory decree of divorce is made, the court may make such order in relation to the children, property, parties, and the maintenance of the parties and children as shall be equitable. * * *"

It is now the settled law and practice of this court that, while a large discretion is vested in the trial courts in applying the provisions of the foregoing statute and in making distribution of property, yet such discretion is not an arbitrary one, but is a sound legal discretion, and is subject to review by this court. This court is also firmly committed to the doctrine that the judgments and orders of trial courts in awarding alimony or in making distribution of property will not be interfered with, unless it is made to appear with at least reasonable certainty that the discre-        **2, 3** tion vested in those courts has been abused to the prejudice of an appellant in some particular or particulars. The last decision of this court where the foregoing doctrine is applied is the recent case of *Friedli* v. *Friedli,* 65 Utah 605, 238 P. 647. The question therefore is: Has the district court, in view of the facts, abused its discretion to the

prejudice of defendant in making distribution of the property?

Usually where there is conflict in the evidence respecting the amount of property or its character or value, there is more or less difficulty in reviewing and modifying the judgment of the district court. In this case, however, we encounter no such difficulty. There is no dispute respecting the character nor the value of the property. In view of the evidence, we have been forced to the conclusion that the division of the property as made by the trial court is clearly inequitable and unfair to the defendant. There is no doubt that, although the deferred payments on the dwelling house were made from the earnings of plaintiff, yet that was so merely because it was more convenient to make them out of his wages than otherwise. While the defendant may not directly have contributed to those payments, there is no doubt whatever that she did so indirectly by defraying the expenses of the household. While it is also true that plaintiff may have contributed some of the money for such expenses, and perhaps for the purchase of some articles used in the household to replace others, yet he was fully, if not more than fully, compensated for such outlays by having had the use of defendant's property during the entire period of the married relation. Moreover, in awarding defendant the household goods, she merely obtained her own in perhaps a less desirable condition, and certainly of less value, while the real estate awarded to plaintiff, not only was the joint property of both, but was the result of their joint earnings. Indeed, from the evidence, we are convinced that it was largely due to the defendant's thrift and frugality that the home was paid for.

In our judgment, the property should be divided as follows: To the defendant should be awarded all of the household goods (that is, all of the personal property), the real estate, with the dwelling house, should be divided equally between the plaintiff and defendant as tenants in common, and the decree awarding the defendant $250 out of the real

estate should be canceled. In all other respects the findings and decree should be, and accordingly are, affirmed.

The judgment or decree of the district court of Salt Lake county is therefore reversed, and the cause is remanded to said court, with directions to modify its findings of fact, conclusions of law, and judgment, and to make findings and conclusions awarding to the defendant all of the personal property, consisting of the household goods heretofore referred to, and to award to plaintiff and defendant jointly the real estate in equal shares as tenants in common, and to cancel the judgment of $250, and to enter judgment accordingly. The plaintiff to pay costs of this appeal.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.